# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF ILLINOIS
# ROCK ISLAND DIVISION

| | |
|---|---|
| **BRANDON FRANKLIN**, on behalf of himself and all others similarly situated, | ) Case No. ) |
| Plaintiff, | ) Judge ) ) |
| vs. | ) **COLLECTIVE AND CLASS ACTION** ) **COMPLAINT** ) |
| **SMITHFIELD FRESH MEATS CORP.**, | ) **JURY DEMAND ENDORSED HEREON** ) |
| Defendant. | ) |

Plaintiff Brandon Franklin ("Plaintiff"), on behalf of himself and all others similarly situated, for her Complaint against Defendant Smithfield Fresh Meats Corp. ("Defendant"), states and alleges as follows:

## INTRODUCTION

1. This case challenges policies and practices of Defendant that violate the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.* and the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1, *et seq.*

2. Plaintiff brings this case as an FLSA "collective action" pursuant to 29 U.S.C. §216(b), which provides that "[a]n action to recover the liability" prescribed by the FLSA "may be maintained against any employer … by any one or more employees for and on behalf of herself or themselves and other employees similarly situated." Plaintiff brings this case on behalf of himself and other "similarly situated" persons who may join this case pursuant to §216(b) (the "Opt-Ins").

3. Plaintiff also brings this claim as a class action pursuant to Fed. R. Civ. P. 23 to remedy violations of the IMWL on behalf of other employees employed by Defendant in Illinois.

## JURISDICTION AND VENUE

4. This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

5. Venue is proper in this forum pursuant to 28 U.S.C. § 1391 because Defendant conducts substantial business in this District and Division and because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District and Division.

6. The Court has supplemental jurisdiction over the asserted state law claims pursuant to 28 U.S.C. § 1367 because the claims are so related to the FLSA claims as to form part of the same case or controversy.

## PARTIES

7. Plaintiff is an adult individual residing in Effingham, Illinois, in Effingham County.

8. Smithfield Fresh Meats Corporation is a Delaware corporation that operates in Monmouth, Illinois, among other places.

9. Within the three years preceding the filing of this Action, Plaintiff was employed by Defendant at Defendant's Monmouth, Illinois location as an hourly, non-exempt production employee.

10. At all relevant times, Plaintiff and others similarly situated were employees within the meaning of 29 U.S.C. § 203(e) and IMWA 820 ILCS §105/3.

11. At all relevant times, Defendant was an employer within the meaning of 29 U.S.C. § 203(d) and IMWA 820 ILCS §105/3.

12. At all relevant times, Defendant was an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1).

13. At all relevant times, Plaintiff and others similarly situated were employees engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. §§ 206-207.

14. Plaintiff's written Consent to Join this Action is attached hereto as **Exhibit A**.

## FACTUAL ALLEGATIONS

15. Defendant manufactures, packages, distributes, and sells food products throughout the United States.

16. As a manufacturer of food products, Defendant is regulated by the U.S. Food and Drug Administration ("FDA"), and is subject to the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 9, *et seq.* (hereinafter "FDCA").

17. In enforcing the FDCA, the FDA promulgates its own Good Manufacturing Practices ("GMPs") for the manufacturing, packing, or holding of human food, set forth in 21 C.F.R. § 110, with which Defendant is required by law to comply.

18. The GMPs have a section dedicated to personnel, which specifically requires that "[a]ll persons working in direct contact with food, food-contact surfaces, and food-packaging materials shall conform to hygienic practices while on duty to the extent necessary to protect against contamination of food." 21 C.F.R. § 110.10(b). These practices include, but are not limited to:

   (1) Wearing outer garments suitable to the operation in a manner that protects against the contamination of food, food-contact surfaces, or food-packaging materials.

   (2) Maintaining adequate personal cleanliness.

   (3) Washing hands thoroughly (and sanitizing if necessary to protect against contamination with undesirable microorganisms) in an adequate hand-washing facility before starting work, after each absence from the work station, and at any other time when the hands may have become soiled or contaminated.

 (4) Removing all unsecured jewelry and other objects that might fall into food, equipment, or containers, and removing hand jewelry that cannot be adequately sanitized during periods in which food is manipulated by hand. If such hand jewelry cannot be removed, it may be covered by material which can be maintained in an intact, clean, and sanitary condition and which effectively protects against the contamination by these objects of the food, food-contact surfaces, or food-packaging materials.

 (5) Maintaining gloves, if they are used in food handling, in an intact, clean, and sanitary condition. The gloves should be of an impermeable material.

 (6) Wearing, where appropriate, in an effective manner, hair nets, headbands, caps, beard covers, or other effective hair restraints.

 (7) Storing clothing or other personal belongings in areas other than where food is exposed or where equipment or utensils are washed.

 (8) Confining the following to areas other than where food may be exposed or where equipment or utensils are washed: eating food, chewing gum, drinking beverages, or using tobacco.

 (9) Taking any other necessary precautions to protect against contamination of food, food-contact surfaces, or food-packaging materials with microorganisms or foreign substances including, but not limited to, perspiration, hair, cosmetics, tobacco, chemicals, and medicines applied to the skin.

19. Notably, "[r]esponsibility for assuring compliance by all personnel with all requirements of this part shall be clearly assigned to competent supervisory personnel." 21 C.F.R. § 110.10(d).

20. The FDCA prohibits the adulteration of food, and the introduction or delivery for introduction into interstate commerce of any adulterated food. 21 U.S.C. § 331.

21. Food is considered adulterated "if it has been prepared, packed, or held under insanitary conditions whereby it may have become contaminated with filth, or whereby it may have been rendered injurious to health[.]" 21 U.S.C. § 342(a)(4).

22. Any person who violates 21 U.S.C. § 331 "shall be imprisoned for not more than one year or fined not more than $1,000, or both." 21 U.S.C. § 333(a)(1).

23. In determining whether food is adulterated, the FDA applies the criteria and definitions set forth in the GMPs. 21 C.F.R. § 110.5(a).

24. Consequently, if Defendant's employees did not follow the GMPs set forth in 21 C.F.R. § 110.10(b), they could be held criminally liable under 21 U.S.C. § 333(a)(1).

25. Thus, it would be impossible for Plaintiff and other similarly situated employees, who were engaged in the manufacturing, packaging, and handling of food products, to perform their work duties unless they wore sanitary clothing and other protective equipment.

26. Indeed, if Plaintiff and other similarly situated employees did not follow federal law and wear sanitary clothing and other personal protective equipment, it is possible, if not likely, that this would cause the spread of food-borne pathogens to those who consumed Defendant's products.

27. Upon information and belief, Defendant would not want to endanger the public by encouraging or permitting its employees to disregard federal and/or state food-safety laws.

28. Upon information and belief, Defendant would deem it impossible for its employees to perform their job duties unless they were in compliance with federal or state food safety laws, including the laws requiring Defendant's employees to wear sanitary and other protective equipment.

29. As a result, compliance with the GMPs by Defendant's employees involved in the manufacturing, packaging, and handling of food is integral and indispensable to the work they are hired to do.

30. Compliance with the GMPs by Defendant's employees involved in the manufacturing, packaging, and handling of food is an intrinsic element of their activities and one in which they cannot dispense if they are to perform their principal activities.

31. Compliance with the GMPs by Defendant's employees involved in the manufacturing, packaging, and handling of food is a component of the work they are hired to do.

32. Unless Defendant's employees involved in the manufacturing, packaging, and handling of food comply with the GMPs, they cannot complete their work.

33. Therefore, the donning and doffing of sanitary clothing and other protective equipment is integral and indispensable to the work performed by Defendant's employees who are involved in the manufacturing, packaging, and handling of food.

34. Because the donning and doffing of sanitary clothing and other protective equipment is integral and indispensable to the work performed by Defendant's employees who are involved in the manufacturing, packaging, and handling of food, the time spent donning and doffing is compensable work time within the meaning of the FLSA and IMWL.

35. The donning of sanitary clothing and other protective equipment by Defendant's employees involved in the manufacturing, packaging, and handling of food is those employees' first principal activity of the day.

36. The doffing of sanitary clothing and other protective equipment by Defendant's employees involved in the manufacturing, packaging, and handling of food is those employees' last principal activity of the day.

37. Plaintiff was employed by Defendant in the last three years in its food manufacturing facility in Monmouth, Illinois.  Plaintiff's job duties involved the manufacturing, packaging, and handling of food. Other similarly situated employees are and were employed by Defendant in the manufacturing, packaging, and handling of food at Defendant's Monmouth, Illinois facility.

38. Because Plaintiff and other similarly situated employees are involved in the manufacturing, packaging, or handling of food, to comply with the GMPs they must wear sanitary clothing and other protective equipment, including, but not limited to, lab coats, hair and beard nets, hard hat, and cut-resistant sleeves and gloves.

39. Plaintiff and other similarly situated employees who are involved in the manufacturing, packaging, or handling of food cannot complete their work unless they are wearing sanitary clothing and other protective equipment.

40. Compliance with the GMPs by Plaintiff and other similarly situated employees is integral and indispensable to the work they are hired to do.

41. Compliance with the GMPs by Plaintiff and other similarly situated employees is a component of the work they are hired to do.

42. Compliance with the GMPs by Plaintiff and other similarly situated employees is an intrinsic element of their activities and one in which they cannot dispense if they are to perform their principal activities.

43. The donning and doffing of sanitary clothing and other protective equipment is integral and indispensable to the work performed by Plaintiff and other similarly situated employees.

44. The donning and doffing of sanitary clothing and other protective equipment by Plaintiff and other similarly situated employees is a component of the work they are hired to do.

45. The donning and doffing of sanitary clothing and other protective equipment by Plaintiff and other similarly situated employees is an intrinsic element of their activities and one in which they cannot dispense if they are to perform their principal activities.

46. The donning of sanitary clothing and other protective equipment by Plaintiff and other similarly situated employees is those employees' first principal activity of the day.

47. The doffing of sanitary clothing and other protective equipment by Plaintiff and other similarly situated employees is those employees' last principal activity of the day.

48. Plaintiff and other similarly situated employees were non-exempt employees under the FLSA and were paid an hourly wage.

49. Within the last three years, Defendant required Plaintiff and other similarly situated employees to don sanitary clothing and other protective equipment while at Defendant's facility. Plaintiff and other similarly situated employees were not paid for this time.

50. Within the last three years, Defendant required Plaintiff and other similarly situated employees to wash their hands and sanitize their boots before entering the production floor. Plaintiff and other similarly situated employees were not paid for this time.

51. At the end of their scheduled shift, Plaintiff and other similarly situated employees were required to doff their sanitary clothing and other protective equipment. Plaintiff and other similarly situated employees were not paid for this time.

52. Plaintiff and other similarly situated employees were not allowed to take their sanitary clothing and protective equipment home. Rather they were required to change into and out of their sanitary clothing and protective equipment at Defendant's facility.

53. Plaintiff and other similarly situated employees, as full-time employees, regularly worked 40 or more hours in a workweek in the three years preceding the filing of this Action, including donning and doffing time and associated travel.

54. Plaintiff and other similarly situated employees were not paid for all of the time spent donning and doffing their sanitary clothing and other protective equipment, washing their hands, sanitizing their boots or for associated travel.

55. As a result of Plaintiff and other similarly situated employees not being paid for all hours worked, Plaintiff and other similarly situated employees were not paid overtime compensation for all of the hours they worked in excess of forty (40) each workweek.

56. Defendant knowingly and willfully engaged in the above-mentioned violations of the FLSA.

57. The amount of time Plaintiff and other similarly situated employees spent performing unpaid work was approximately ten to fifteen minutes or more each day. This resulted in approximately 50 minutes to 1 hour and 25 minutes or more of unpaid overtime per employee, per week.

## COLLECTIVE ACTION ALLEGATIONS

58. Plaintiff brings this action on his own behalf pursuant to 29 U.S.C. § 216(b), and on behalf of all other similarly situated persons who have been, are being, or will be, adversely affected by Defendant's unlawful conduct.

59. The collective that Plaintiff seeks to represent and for whom Plaintiff seeks the right to send "opt-in" notices for purposes of the collective action, and of which Plaintiff is himself a member, is composed of and defined as follows:

> **All current and former employees of Smithfield Fresh Meats Corp. who were involved in the manufacturing, packaging, or handling of food or food products and who were required to don and doff sanitary clothing and other protective equipment at any time during the three (3) years preceding the date of the filing of this Action to the present and worked more than forty (40) hours in at least one workweek**. ("FLSA Collective").

60. This action is maintainable as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) as to claims for unpaid overtime compensation, liquidated damages, attorneys' fees and costs under the FLSA. In addition to Plaintiff, numerous current and former employees are similarly situated with regard to their claims for unpaid wages and damages. Plaintiff is representative of those other employees and are acting on behalf of their interests as well as her own in bringing this action.

61. These similarly situated employees are known to Defendant and are readily identifiable through Defendant's payroll records. These individuals may readily be notified of this action and allowed to opt-in pursuant to 29 U.S.C. § 216(b), for the purpose of collectively

9

adjudicating their claims for unpaid overtime compensation, liquidated damages, attorneys' fees and costs under the FLSA.

## ILLINOIS CLASS ACTION ALLEGATIONS

62. Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(a) and (b)(3) on behalf of himself and all a class of persons employed by Defendant in Illinois within the last three years ("Illinois Class") defined as:

> **All current and former employees of The Hershey Company who were involved in the manufacturing, packaging, or handling of food or food products and who were required to don and doff sanitary clothing and other protective equipment at any time during the three (3) years preceding the date of the filing of this Action to the present and worked more than (40) hours in at least one workweek**.

63. The class is so numerous that joinder of all class members is impracticable. Plaintiff is unable to state the exact size of the potential Illinois Class but, upon information and belief, avers that it consists of at least 100 people.

64. There are questions of law or fact common to the Illinois Class including: whether Defendant failed to pay its employees for donning and doffing time, hand washing, sanitizing their boots and associated travel, and whether that resulted in the underpayment of overtime.

65. Plaintiff will adequately protect the interests of the Illinois Class. His interests are not antagonistic to but, rather, are in unison with, the interests of the Illinois Class members. Plaintiff's counsel has broad experience in handling class action wage-and-hour litigation and are fully qualified to prosecute the claims of the Illinois Class in this case.

66. The questions of law or fact that are common to the Illinois Class predominate over any questions affecting only individual members. The primary questions that will determine Defendant's liability to the Illinois Class, listed above, are common to the class, and predominate over any questions affecting only individual class members.

67. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Requiring Illinois Class members to pursue their claims individually would entail a host of separate suits, with concomitant duplication of costs, attorneys' fees, and demands on court resources. Many Illinois Class members' claims are sufficiently small that they would be reluctant to incur the substantial cost, expense, and risk of pursuing their claims individually. Certification of this case pursuant to Fed. R. Civ. P. 23 will enable the issues to be adjudicated for all class members with the efficiencies of class litigation.

## COUNT ONE
### (FLSA Overtime Violations)

68. Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

69. Plaintiff and other similarly situated employees were not paid for time spent donning and doffing their sanitary clothing and other protective equipment, washing their hands, sanitizing their boots or for associated travel.

70. Plaintiff and other similarly situated employees regularly more than 40 hours per workweek for Defendant.

71. Defendant's practice and policy of not paying Plaintiff and other similarly situated employees for time spent donning and doffing their sanitary clothing and other protective equipment, washing their hands, sanitizing their boots or for associated travel, resulted in Defendant's failure to pay Plaintiff and other similarly situated employees overtime compensation at a rate of one and one-half times their regular rate of pay for all hours worked in excess of 40 hours per workweek, in violation of the FLSA, 29 U.S.C. §§ 201-219, 29 C.F.R. § 785.24.

72. By engaging in the above-mentioned conduct, Defendant willfully, knowingly, and/or recklessly violated provisions of the FLSA.

73. As a result of Defendant's practices and policies, Plaintiff and other similarly situated employees have been damaged in that they have not received wages due to them pursuant to the FLSA.

## COUNT TWO
### (Illinois Overtime Violations)

74. Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

75. Plaintiff and other similarly situated employees were not paid for time spent donning and doffing their sanitary clothing and other protective equipment, washing their hands, sanitizing their boots or for associated travel.

76. Plaintiff and other similarly situated employees regularly worked more than 40 hours per workweek for Defendant.

77. Defendant's practice and policy of not paying Plaintiff and other similarly situated employees for time spent donning and doffing their sanitary clothing and other protective equipment, washing their hands, sanitizing their boots or for associated travel, resulted in Defendant's failure to pay Plaintiff and other similarly situated employees overtime compensation at a rate of one and one-half times their regular rate of pay for all hours worked in excess of 40 hours per workweek, in violation of the IMWL, 820 ILCS 105/1 *et seq*.

78. As a result of Defendant's practices, Plaintiff and other similarly situated Illinois Class employees have been damaged in that they have not received wages due to them pursuant to Illinois' wage and hour laws.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of himself and all persons similarly situated, prays that this Honorable Court:

A. Conditionally certify this case as an FLSA "collective action" pursuant to 29 U.S.C. § 216(b) and direct that Court-approved notice be issued to similarly situated persons informing them of this action and enabling them to opt-in;

B. Certify this case as a class action under Fed. R. Civ. P. 23 as to the Illinois Class;

C. Enter judgment against Defendant and in favor of Plaintiff, the Opt-Ins who join this case pursuant to the FLSA and the Illinois Class pursuant to the IMWL;

D. Award Plaintiff, the Opt-Ins who join this case pursuant to the FLSA and the Illinois Class actual damages for unpaid wages;

E. Award liquidated damages to the maximum amount permitted by applicable law (100% under the FLSA and 200% under the IMWL);

F. Award Plaintiff and the Illinois Class statutory damages for overtime wage violations pursuant to the 5% interest penalties for IMWL violations;

G. Award Plaintiff, the Opt-Ins who join this case pursuant to the FLSA and the Illinois Class attorneys' fees, costs, and disbursements; and,

H. Award Plaintiff, the Opt-Ins who join this case pursuant to the FLSA and the Illinois Class further and additional relief as this Court deems just and proper.

Respectfully submitted,

*/s/ Shannon M. Draher*
Shannon M. Draher (OH Bar 0074304)
Hans A. Nilges (OH Bar 0076017)
**NILGES DRAHER LLC**
7034 Braucher St., N.W., Suite B
North Canton, OH 44720
Telephone:   330-470-4428
Facsimile:    330-754-1430
Email:          sdraher@ohlaborlaw.com
                    hnilges@ohlaborlaw.com

*Counsel for Representative Plaintiff*

## **JURY DEMAND**

Representative Plaintiff demands a trial by jury on all eligible claims and issues.

*/s/ Shannon M. Draher*
*Counsel for Representative Plaintiff*