UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| BRANDON FRANKLIN, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SMITHFIELD FRESH MEATS CORP.,<br><br>Defendant. | Case No. 4:23-cv-04054-SLD-JEH |

ORDER

Before the Court is the Parties' Joint Motion for Approval of Settlement and Dismissal of Complaint ("Joint Motion"), ECF No. 20. For the reasons that follow, the motion is GRANTED.

BACKGROUND

Plaintiff Brandon Franklin was employed by Smithfield Fresh Meats Corp. ("Smithfield") and worked at Smithfield's food manufacturing facility in Monmouth, Illinois. Am. Compl. ¶¶ 9, 37, ECF No. 9; Answer Am. Compl. ¶¶ 9, 11, 13, 37, ECF No. 12. In his Amended Complaint, filed May 11, 2023, Franklin asserts two claims: one under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219, and another under the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1–15 (2023). *See* Am. Compl. ¶¶ 68–73 (asserting FLSA violations); *id.* ¶¶ 74–78 (asserting IMWL violations). Nanieyia Towns and Marvin McGowan (collectively "Opt-In Plaintiffs") consented to join the collective action under the FLSA. *See* 29 U.S.C. § 216(b); Not. Filing Consent Join Form, ECF No. 13 (notice of Towns's consent); Not. Filing Consent Join Form, ECF No. 19 (second and operative notice of McGowan's consent).[1]

---

[1] Though Franklin asserts his claims as class and collective claims, Am. Compl. ¶¶ 2–3, no class was certified and only two individuals, Towns and McGowan, opted in by filling consent forms. Such filings gave Towns and McGowan party status with respect to the FLSA claim, *see* 29 U.S.C. § 216(b), and the consent forms' plain

1

Franklin asserts that Smithfield failed to properly pay him and other similarly situated employees overtime pay. Am. Compl. ¶¶ 54–57. He asserts that Smithfield, as a manufacturer of food products, is subject to the Good Manufacturing Practices ("GMPs") applicable to human food, *id.* ¶ 15–17, which requires Smithfield's food-handling employees to, *inter alia*, wear sanitary clothing and other personal protective equipment ("PPE") to prevent food contamination, *id.* ¶¶ 18–19. Franklin argues the GMPs render wearing PPE "integral and indispensable to the work performed by Defendant's employees who are involved in the manufacturing, packaging, and handling of food," and therefore the time spent "donning and doffing" such PPE is compensable work time within the FLSA and IMWL. *Id.* ¶¶ 25–36, 38–47. Franklin asserts that he and other similarly situated employees "were required to change into and out of their sanitary clothing and protective equipment at Defendant's facility," and were not paid for this time. *Id.* ¶¶ 49–55. Franklin states that he and other similarly situated employees were hourly non-exempt employees under the FLSA, and argues that failure to compensate employees for this time spent working in excess of 40 hours per week violated the FLSA. *Id.* ¶¶ 34, 48, 57. Franklin has not moved for conditional or class certification. Joint. Mot. 2.

---

language dictates that Towns and McGowan consented to have claims that can be considered in an FLSA suit—like IMWL claims—adjudicated in this matter as well, *see Prickett v. DeKalb Cnty.*, 349 F.3d 1294, 1297 (11th Cir. 2003) (holding § 216(b) opt-in plaintiffs retain party status with respect to subsequently added FLSA claims); *Albritton v. Cagle's, Inc.*, 508 F.3d 1012, 1018 (11th Cir. 2007) (citing *Prickett*, 349 F.3d at 1297–98) (finding that opt-in plaintiffs' consent to subsequently added claims is dictated by the plain language of the consent form); *Hicks v. T.L. Cannon Corp.*, 35 F. Supp. 3d 329, 337–39 (W.D.N.Y. 2014) (citing *Prickett*, 349 F.3d at 1297, *and Albritton*, 508 F.3d at 1018) (concluding FLSA opt-in plaintiffs could seek redress with respect to the lawsuit's New York state-law wage claims); Consent to Join Pursuant to 29 U.S.C. §216(b) 1, Not. Filing Consent Join Form Ex. A, ECF No. 19-1 (consenting and agreeing to "opt-in to become a plaintiff collective member in a lawsuit or arbitration brought under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §201, et seq. against my current/former employer, Smithfield Foods, Inc., and any of its officers, agents, parent corporations, subsidiaries, joint employers and representatives" (emphasis removed)). Because no class was certified, this settlement resolves only the claims of Franklin, Towns, and McGowan and no other potential class or collective members. *See Simer v. Rios*, 661 F.2d 655, 664 (7th Cir. 1981) ("In a settlement entered without class certification[,] the judgment will not have a res judicata effect on the claims of absent class members."); *Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1216 (11th Cir. 2001) ("[A] putative plaintiff must affirmatively opt into a § 216(b) action by filing his written consent with the court in order to be considered a class member and be bound by the outcome of the action.").

Smithfield filed its answer and affirmative defenses on May 24, 2023. Answer Am. Compl. Smithfield admitted it employed Franklin, *id.* ¶¶ 9, 11, 13, 37, and that Franklin was an hourly, non-exempt employee under the FLSA, *id.* ¶ 48, but denied that Franklin and similarly situated employees were required to don and doff PPE at Smithfield's facility and that they were not compensated for this work, *id.* ¶¶ 49–55. Smithfield asserted 25 affirmative defenses, *id.* at 23–29, including an assertion that putative class or collective members "violated policies and guidelines regarding timekeeping and/or donning and doffing or worked in violation of instructions from their supervisors or managers," *id.* at 29.

The Parties have reached a settlement and now ask the Court to approve their settlement and dismiss the case with prejudice. Joint Mot. 1.

## DISCUSSION

### I. Legal Standard

Stipulated settlements of claims brought under the FLSA and the IMWL must be approved by a court.[2] *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982) (FLSA); *Lewis v. Giordano's Enters., Inc.*, 921 N.E.2d 740, 751, 753 (Ill. App. Ct. 2009) (IMWL).[3] The Court applies the same standard to determine whether to approve settlements of claims under both laws. *See Lewis*, 921 N.E.2d at 745–51 (relying on federal case law interpreting the FLSA to conclude that private settlements are barred under the IMWL).

"To determine the fairness of a settlement under the FLSA, the court must consider whether the agreement reflects a reasonable compromise of disputed issues rather than a mere

---

[2] FLSA claims may also be settled under direct supervision of the Secretary of Labor. 29 U.S.C. § 216(c).
[3] The Seventh Circuit has not addressed this issue, but district courts in this Circuit routinely require approval. *See, e.g.*, *Iannotti v. Wood Grp. Mustang*, No. 20-cv-958-DWD, 2023 WL 6217061, at *1 (S.D. Ill. Sept. 25, 2023); *Salcedo v. D'Arcy Buick GMC, Inc.*, 227 F. Supp. 3d 960, 961 & n.1 (N.D. Ill. 2016); *Paredes v. Monsanto Co.*, No. 4:15-CV-088 JD, 2016 WL 1555649, at *1 (N.D. Ind. Apr. 18, 2016). *But see Martin v. Spring Break '83 Prods., L.L.C.*, 688 F.3d 247, 255 (5th Cir. 2012) (holding some private settlements of FLSA claims may be enforceable).

waiver of statutory rights brought about by an employer's overreaching." *Rambo v. Glob. Diversified, Inc.*, No. 4:20-cv-04212-SLD-JEH, 2021 WL 262556, at *1 (C.D. Ill. Jan. 26, 2021) (quotation marks omitted). Courts generally approve settlements that are the product of "contentious arm's-length negotiations, which were undertaken in good faith by counsel and where serious questions of law and fact exist such that the value of an immediate recovery outweighs the mere possibility of further relief after protracted and expensive litigation." *Ellison v. Nisource, Inc.*, No. 2:15-CV-59-TLS, 2016 WL 782857, at *1 (N.D. Ind. Feb. 29, 2016) (quotation marks omitted). Relevant factors include:

> (1) the complexity, expense, and likely duration of the litigation; (2) the stage of the proceeding and the amount of discovery completed; (3) the risks of establishing liability; (4) the risks of establishing damages; (5) the ability of the defendants to withstand a larger judgment; (6) the range of reasonableness of the settlement fund in light of the best possible recovery; and (7) the range of reasonableness of the settlement fund in light of all the risks of litigation.

*Paredes v. Monsanto Co.*, No. 4:15-CV-088 JD, 2016 WL 1555649, at *2 (N.D. Ind. Apr. 18, 2016).

   II.   **Analysis**

The Parties' settlement agreement consists of three separate agreements between Smithfield and each of Franklin, McGowan, and Towns. *See* Settlement Agreement and Release 2–6, Joint Mot. Ex. 1, ECF No. 20-1 (settling Franklin's claims); *id.* at 7–11 (settling McGowan's claims); *id.* at 12–16 (settling Towns's claims). Each agreement requires the Plaintiff to fully release and discharge Smithfield from any and all claims, debts, etc., "that were asserted or could have been asserted in this Lawsuit under state or federal law." *E.g.*, *id.* at 3–4. Each Plaintiff is also required to dismiss this action with prejudice and to keep confidential the terms of the settlement, with some limited exceptions. *E.g.*, *id.* at 4–5. The Parties agree the settlement is not an admission of wrongdoing. *E.g.*, *id.* at 5. In exchange, Smithfield agrees to

4

pay Franklin $4,000, McGowan $250, Towns $250, and a total of $9,000 in attorneys' fees and costs. *Id.* at 3, 8, 13; *see also* Joint Mot. 3 ("The settlement payments to Plaintiffs reflect approximately one hour of alleged uncompensated overtime each workweek that Plaintiffs worked 40 or more hours during his her or employment. In exchange for their settlement payments, Plaintiffs are releasing their wage and hour claims against Defendant.").

The Court finds that this settlement agreement is the product of arm's-length negotiations. Both sides are represented by experienced counsel negotiating in good faith regarding clear *bona fide* disputes over the law and facts. *See id.* at 2–3. For example, Smithfield "asserts that pursuant to its written policies, its employees are required to don and doff all sanitary and protective clothing on the clock and that such donning and doffing time is paid." *Id.* at 2. "[A]ny employees who allegedly don and doff their sanitary and protective clothing off the clock are in violation of Defendant's written policies and are not similarly situated to other employees." *Id.* Such disputes represent serious questions of fact affecting any potential recovery. *See Ellison*, 2016 WL 782857, at *1. Moreover, this case is in its early stages. *See Paredes*, 2016 WL 1555649, at *2 ("By resolving their claims against [defendant] at this early stage, the plaintiffs are able to avoid [the time and expense of litigation] . . . ."). It is evident "the value of an immediate recovery outweighs the mere possibility of further relief after protracted and expensive litigation." *Ellison*, 2016 WL 782857, at *1 (quotation marks omitted).

The Court pauses to reflect on the fact that the attorneys' fees award is double the combined amounts that Franklin, McGowan, and Towns will receive—a potentially disproportionate sum. *See Anderson v. AB Painting & Sandblasting Inc.*, 578 F.3d 542, 546 (7th Cir. 2009) ("[A] comparatively large fee request raises a red flag."). However, the Seventh Circuit has "rejected the notion that the fees must be calculated proportionally to damages," *id.* at

5

545 (quotation marks omitted), and Congress's decision to provide for fee shifting "affirm[s] its desire to have even small violations of the FLSA litigated," *Dominguez v. Quigley's Irish Pub, Inc.*, 897 F. Supp. 2d 674, 686 (N.D. Ill. 2012); *see also* 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."). "The purpose of a fee shifting statute, which is to enable smaller claims to be litigated, would be thwarted if attorneys' fees had to be strictly proportional to the amount recovered." *Dominguez*, 897 F. Supp. 2d at 687. Courts in this Circuit have approved attorneys' fees in much greater disproportion than merely two times the damages recovered. *See, e.g.*, *id.* at 686–88 (declining to reduce FLSA fee award simply because it was 28 times greater than amounts obtained via settlement).

Here, the Parties settled this matter relatively early in the instant litigation, such that there is little risk of fee manipulation via artificial protraction. *Cf. id.* at 686 ("Congress has determined that the importance of achieving the goals subserved by the FLSA outweighs the risk of manipulation of fee petitions by some lawyers in some cases."). Plaintiffs' attorneys drafted two complaints, coordinated obtaining and filing Opt-In Plaintiffs' consent forms, negotiated a discovery plan, engaged in preliminary fact discovery, calculated projected damages based on wage and hour data which Defendant produced, and spent time negotiating this settlement. *See* Joint Mot. 1–3. The Court is satisfied that this negotiated amount of attorneys' fees represents a fair and reasonable resolution of this component of the statutorily required relief.

The Court finds the additional payment to Franklin, "above and beyond an amount representing his alleged unpaid overtime," *id.* at 3 n.1, is fair and reasonable. "Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." *Castillo v. Noodles & Co.*, No. 16-

cv-03036, 2016 WL 7451626, at *2 (N.D. Ill. Dec. 23, 2016) (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)). Such awards are appropriate in the employment litigation context because "the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers." *Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698(SAS)(KNF), 2007 WL 7232783, at *7 (S.D.N.Y. June 25, 2007) (quotation marks omitted). Here, the additional award to Franklin is justified by the employment law context and Franklin's service as named plaintiff in this putative class and collective action.[4]

Finding that this settlement constitutes an arm's-length negotiation between represented parties where genuine legal and factual disputes are present and finding that the award of attorneys' fees is reasonable, the Court APPROVES the Parties' settlement agreement.

## CONCLUSION

Accordingly, the Joint Motion to Approve the Settlement Agreement and for Attorneys' Fees and Costs, ECF No. 20, is GRANTED. The Court APPROVES the Parties' settlement and orders that this case be DISMISSED WITH PREJUDICE. The Clerk is directed to enter judgment and close the case.

Entered this 3rd day of November, 2023.

                                                                            s/ Sara Darrow
                                                                            SARA DARROW
                                                         CHIEF UNITED STATES DISTRICT JUDGE

---

[4] The Parties claim that "Franklin is executing a general release because he will receive an additional payment," Joint Mot. 3 n.1, but the Opt-In Plaintiffs are executing settlement agreements with materially identical release terms, *see* Settlement Agreement and Release 1–16. Each settlement agreement states that it "sets forth the entire agreement between the Parties hereto, and fully supersedes any prior agreements or understandings between the Parties with regard to the subject matter hereof." *Id.* at 5, 10, 15. Therefore, the Court does not consider any such purported general release in its approval of the settlement agreement.